[Cite as *State v. Clemons*, 2017-Ohio-7980.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No. L-16-1136

      Appellee                                   Trial Court No. CR0201601310

v.

Timmie Clemons                              **DECISION AND JUDGMENT**

      Appellant                                   Decided:   September 29, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Clayton M. Gerbitz, for appellant.

* * * * *

**JENSEN, P.J.**

## I.  Introduction

{¶ 1} Appellant, Timmie Clemons, appeals the judgment of the Lucas County

Court of Common Pleas, sentencing him to four years in prison after a jury found him

guilty of endangering children.

## A. Facts and Procedural Background

**{¶ 2}** On February 18, 2016, appellant was indicted on one count of endangering children in violation of R.C. 2919.22(B)(1), (E)(1), and (E)(2)(d), a felony of the second degree. The indictment stemmed from an incident that occurred on February 6, 2016, in which appellant was alleged to have beaten his 13-year-old daughter, D.C. Following pretrial proceedings and discovery, a two-day jury trial commenced on May 24, 2016.

**{¶ 3}** At trial, the state called two witnesses during its case-in-chief. D.C. was the state's first witness. During D.C.'s testimony, she testified that appellant became angry because he had lost his phone. Appellant then checked D.C.'s bag for the phone, which was not inside the bag. D.C. recounted the following concerning what transpired after appellant searched her bag:

> He started punching me and so I was fighting back. Then he had
>
> picked me up and he threw me into a table, and then I was – I fell to the
>
> floor and I tried to grab for a hammer. He then took the hammer from me
>
> and tried to hit me with it, and then he threw me onto the couch. My
>
> grannie was trying to help, and he pushed her and then my mom and then
>
> pulled up, so my grannie went to go open the door and he punched me in
>
> my eye and he went towards the kitchen and I got up and ran out the house.

After making her escape from appellant's home, D.C. was transported to the hospital.

**{¶ 4}** As D.C. continued in her testimony, the state asked her: "Has this behavior between your dad and hitting you ever happened before?" Appellant's counsel objected

2.

to the state's question and argued that the state was attempting to elicit inadmissible testimony about appellant's prior bad acts in contravention of Evid.R. 404(B). In responding to counsel's argument, the state insisted that "[t]his is more of a pattern of what he's done to her in her lifetime. We're not offering it to prove that he acted in conformity with an earlier crime. This is not ID, not prior plan. It is real. It is her dad. He's hit her before. We think it is very relevant and it is not unfairly prejudicial." Upon consideration of the parties' arguments, the court overruled the objection. Thereafter, D.C. detailed an incident that had previously occurred in which appellant became angry with her and started to punch her repeatedly.

{¶ 5} As its second and final witness, the state called Deborah Hahn. Hahn, a detective with the Toledo Police Department, interviewed D.C. at the hospital following the February 6, 2016 incident. During her testimony, Hahn stated that D.C. was going in and out of consciousness when she first arrived at the hospital. Consequently, Hahn was initially unable to speak with D.C. Hahn testified that D.C. had "visible injuries to her eye and she was actually spitting into a little spittoon that they had given her there and there was blood." Concerning the injuries to D.C.'s face, Hahn indicated that D.C. had a 1.5 inch cut above her left eyebrow and her eye was swollen shut. Eventually, Hahn was able to question D.C. regarding the incident that led to her being hospitalized. According to Hahn, D.C.'s description of the incident matched her testimony at trial.

{¶ 6} At the close of Hahn's testimony, the state rested. Appellant moved the court for an acquittal under Crim.R. 29, and the court denied the motion. Appellant then took the stand in his own defense. During his testimony, appellant denied having beaten

3.

D.C.  Rather, appellant explained that D.C. began to kick him and punch him after he seized her bag and began searching it for his phone.  Appellant stated that D.C. then suddenly "rush[ed] and hit her head against the window trying to throw herself out." After hitting her head against the window, D.C. picked up a hammer and started swinging it at appellant.  Appellant then grabbed the hammer and a struggle ensued.  Appellant testified that the injury to D.C.'s eye occurred as a result of the struggle over the hammer.

{¶ 7} Following appellant's testimony, the jury found appellant guilty of the sole count of child endangering contained in the indictment.  The trial court ultimately sentenced appellant to four years in prison.  It is from this order that appellant has filed a timely notice of appeal.

## B.  Assignments of Error

{¶ 8} On appeal, appellant assigns the following errors for our review:

1)  The Trial Court erred to the prejudice of Appellant when it allowed evidence of prior bad acts to be admitted over objection.

2)  Appellant's conviction for Endangering Children fell against the manifest weight of the evidence.

## II.  Analysis

{¶ 9} In his first assignment of error, appellant argues that the trial court erred in allowing D.C. to testify about a prior altercation in violation of Evid.R. 404(B).

{¶ 10} "The admission of [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice."  *State v. Morris*, 132

4.

Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66.

{¶ 11} Evid.R. 404(B) and its statutory counterpart, R.C. 2945.59, "preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 16. The rule also provides, however, that evidence of other acts may be admissible for other purposes, such as to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* at ¶ 19. As set forth in *Williams*, in considering other acts evidence, trial courts should conduct a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403. *Id.* at ¶ 20.

{¶ 12} Here, appellant argues that D.C.'s testimony concerning a prior incident in which he allegedly punched her repeatedly should have been excluded upon his objection

5.

to such testimony because it was offered in order to show conduct in conformity therewith and was not offered for a legitimate purpose under Evid.R. 404(B). The state responds by arguing that D.C.'s testimony was admissible to show absence of mistake or accident to rebut appellant's testimony. Alternatively, the state insists that any error in allowing D.C.'s testimony was harmless in light of the remaining "overwhelming" evidence establishing appellant's guilt beyond a reasonable doubt.

{¶ 13} Upon consideration of the parties' arguments, we find that the trial court abused its discretion in allowing D.C. to testify of the prior altercation involving appellant. Notably, the state explained the purpose for which D.C.'s testimony was offered when it stated during the trial that the testimony evidenced "a pattern of what he's done to her in her lifetime. We're not offering it to prove that he acted in conformity with an earlier crime. This is not ID, not prior plan. It is real. It is her dad. He's hit her before." This is precisely the type of argument that Evid.R. 404(B) forecloses. We see no meaningful difference between offering evidence of other acts in order to demonstrate a pattern of behavior and offering such evidence to prove action in conformity therewith, as in either case the state would be inviting the trier of fact to conclude that the defendant is guilty in the present case because he was guilty in the past. Further, we find no merit to the state's assertion that D.C.'s testimony was offered to show an absence of mistake.

{¶ 14} We now turn to the state's alternative argument that the error was harmless. In *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, the Ohio Supreme Court considered the standard to be applied in determining harmless error where a criminal defendant seeks a new trial because of the erroneous admission of evidence

6.

under Evid.R. 404(B). The court summarized its analysis in the subsequent decision of *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37:

> Recently, in *Morris*, a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and nonconstitutional errors under Crim.R. 52(A). *Id.* at ¶ 22-24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. *Id.* at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. *Id.* at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 29, 33.

{¶ 15} Ohio has long recognized the dangers presented by admitting other acts evidence in criminal prosecutions. These include "[t]he overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts" and "the tendency to condemn not because * * * [the defendant] * * * is believed guilty of the present charge but because he has escaped punishment from other offenses." *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). The risk is "particularly high

7.

when the other acts are very similar to the charged offense or of an inflammatory nature." *State v. Miley*, 5th Dist. Richland Nos. 2005-CA-67 and 2006-CA-14, 2006-Ohio-4670, ¶ 58.

{¶ 16} Here, we find that the trial court's erroneous admission of D.C.'s testimony was highly prejudicial to appellant. Indeed, this case hinged on which witness, D.C. or appellant, the jury deemed to be more credible. The third witness, detective Hahn, was not present during the altercation between D.C. and appellant and thus could not corroborate D.C.'s testimony as to whether appellant was the aggressor. Without the improper admission of the other acts evidence in this case, the jury may well have concluded that appellant was the more credible witness and exonerated him of the charge of endangering children. However, the admission of the other acts evidence tipped the scales in D.C.'s favor by inviting the jury to conclude that appellant was guilty of the charge simply because he had allegedly committed similar acts in the past.

{¶ 17} Because we find that there is a reasonable possibility that the other acts evidence may have contributed to appellant's conviction, we conclude that the error was not harmless beyond a reasonable doubt. Moreover, we find that the remaining evidence does not establish appellant's guilt beyond a reasonable doubt without assigning credibility to D.C.'s testimony and discounting appellant's credibility. Accordingly, appellant's first assignment of error is well-taken. In light of the improper admission of other acts evidence in this case, we conclude that appellant is entitled to a new trial. *See State v. Sargent*, 2015-Ohio-704, 29 N.E.3d 331, ¶ 36 (6th Dist.). Consequently,

8.

appellant's second assignment of error concerning the manifest weight of the evidence is moot.

### III.  Conclusion

{¶ 18} In light of the foregoing, we reverse the judgment of the Lucas County Court of Common Pleas and remand the case to the trial court for a new trial.  The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.           _____
                                            JUDGE

James D. Jensen, P.J.

                                     _____
Christine E. Mayle, J.                    JUDGE
CONCUR.

                                     _____
                                            JUDGE

9.