[Cite as *State v. Fread*, 2013-Ohio-5206.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| STATE OF OHIO, | : | |
| --- | --- | --- |
| Plaintiff-Appellee, | : | CASE NO.   CA2013-03-045 |
| | : | O P I N I O N |
| - vs - | | 11/25/2013 |
| | : | |
| TYLER FREAD, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAIRFIELD MUNICIPAL COURT
Case No. 2013-03-045


Stephen J. Wolterman, Todd J. Abbott, 530 Wessel Drive, Suite 2A, Hamilton, Ohio 45011, for plaintiff-appellee

Gary A. McGee, 332 South Front Street, Hamilton, Ohio 45011, for defendant-appellant


**RINGLAND, P.J.**

{¶ 1}   Defendant-appellant, Tyler Fread, appeals his conviction for domestic violence from the Fairfield Municipal Court.

{¶ 2}   C.R. is the son of Dawn Fread and Burton Roberts.  They are divorced, with each parent having subsequently remarried.  The parents have a shared parenting plan that essentially grants them each equal time with C.R.

{¶ 3} On Friday, April 22, 2012, C.R. went to stay with his mother and Fread, her husband. That evening, Fread asked C.R. if he had any homework or upcoming tests. C.R. responded that he did not, and was therefore allowed to spend the weekend at a friend's house.

{¶ 4} C.R. returned to the home of his mother and Fread on Sunday. Sometime that evening, C.R. asked Fread if he would make him breakfast in the morning because he had to take the Ohio Achievement Test when he got to school. Fread then accused C.R. of lying to him when he had previously told him he did not have any tests to study for. Fread forced C.R. to call his father and explain to him what had happened. Following the conversation with his father, C.R. returned to his room.

{¶ 5} Fread also returned to C.R.'s room and continued the discussion. According to C.R., Fread called him a liar, put his hands around his throat, pushed him flat onto the bed and leaned over him. Fread then left the room, leaving C.R. on his bed. C.R. rejoined the family in the living room a short time later. C.R. did not inform his mother of those events that evening or the following morning at breakfast.

{¶ 6} On Monday, April 23, 2012, after having returned to his father's house, C.R. informed his stepmother of the events of the preceding evening. C.R.'s stepmother then contacted the police. C.R. gave a statement to the police. A few weeks later, on May 8, 2012, C.R. met with Dr. David Knight, a psychologist, regarding the events of April 22, 2012.

{¶ 7} Fread was arrested on May 10, 2012 and charged with domestic violence in violation of Fairfield Municipal Code Section 537.14. He was convicted following a bench trial in the Fairfield Municipal Court on May 31, 2012. The trial court subsequently denied Fread's motion for a new trial or a guilty finding on the lesser included offense of disorderly conduct.

{¶ 8} Fread now appeals, raising three assignments of error for our review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN ALLOWING DR. DAVID KNIGHT TO TESTIFY AS A "LAY WITNESS."

{¶ 11} Fread first argues that Dr. Knight testified as an expert witness rather than a lay witness. Accordingly, he asserts that the state failed to provide a report 21 days prior to trial summarizing Dr. Knight's testimony, findings, analysis, conclusions, or opinion, and a summary of his qualifications as is required pursuant to Crim.R. 16(K). In turn, the state argues that the trial court properly determined that Dr. Knight was a lay witness and therefore admitted his testimony absent the Crim.R. 16(K) report.

{¶ 12} As the trial court possesses broad discretion with respect to the admission or exclusion of evidence, a reviewing court applies an abuse of discretion standard. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 39, citing *State v. Robb*, 88 Ohio St.3d 59, 68 (2000).

{¶ 13} In the present case, Dr. Knight's testimony was limited to the statements C.R. made to him during their May 8, 2012 meeting. Fread appears to argue that because Dr. Knight is a psychologist capable of being qualified as an expert, and because C.R. only made those statements to Dr. Knight based on his status as a psychologist, Dr. Knight is therefore required to be qualified as an expert in order to testify. Fread further supports that argument by noting that Dr. Knight's testimony regarding C.R.'s statements was permitted as an exception to hearsay under Evid.R. 803(4) on the basis it was for "treatment and diagnosis."

### I. Expert vs. Lay Witness

{¶ 14} An "expert witness" is defined as one who is "qualified by knowledge, skill, experience, training, or education to provide a scientific, technical, or other specialized opinion about the evidence or a fact issue. * * *" Black's Law Dictionary (8th Ed.2004) 1633. In contrast, a "lay witness" is defined as one who does not testify as an expert and is restricted to "giving an opinion or making an inference that (1) is based on firsthand

knowledge, and (2) is helpful in clarifying the testimony or in determining facts." *Id.*

{¶ 15} We cannot find, nor does Fread direct us to, testimony by Dr. Knight that pertains to scientific, technical or other specialized opinion. Contrary to Fread's argument, the determination of whether a witness must be qualified as an expert is based upon the content of the testimony rather than the means by which it was obtained. It is well-established that treating physicians can be called at trial to testify as fact witnesses and not as experts retained in anticipation of litigation. *E.g.*, *Henry v. Richardson*, 193 Ohio App.3d 375, 2011-Ohio-2098, ¶ 33 (12th Dist.). Here, the subject matter of the testimony consisted only of statements C.R. made to Dr. Knight. It is devoid of testimony that would require Dr. Knight's knowledge, skill, experience, training or education. Accordingly, the trial court did not err in permitting Dr. Knight to testify as a fact-based lay witness.

## II. Evid.R. 803(4)

{¶ 16} Fread's second argument asserts that if Dr. Knight was found to be a lay witness, his testimony as to C.R.'s statements was inadmissible hearsay not subject to the exception under Evid.R. 803(4) on the basis of medical diagnosis or treatment.

{¶ 17} Hearsay is an out of court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay is not admissible unless the statement falls under some exception to the hearsay rule. Evid.R. 802. Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of statements that are made for medical treatment or diagnosis. *State v. Wagers*, 12th Dist. Preble No. CA2009-06-018, 2010-Ohio-2311, ¶ 51. Pursuant to Evid.R. 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible. Nowhere does Evid.R. 803(4) state that the person to whom the statements are made must be subsequently

qualified as an expert at trial in order for the statements to be admissible.

{¶ 18} This court has previously held that statements made during the course of a psychological examination are admissible to the same extent as statements made to a treating physician, provided that the purpose of the psychological examination is the diagnosis and treatment of the victim's psychological condition, rather than gathering evidence against the accused. *State v. Vaughn*, 106 Ohio App.3d 775, 780 (12th Dist.1995). In addition, the determination of whether Evid.R. 803(4) applies is based upon the purpose for which the statement was made rather than whether the person to whom the statement was made subsequently testifies as a lay witness or an expert. Finally, it is irrelevant whether diagnosis or treatment actually occurs for Evid.R. 803(4) to apply. All that is required is that the statements were made *for the purpose of* diagnosis or treatment.

{¶ 19} Fread cites *State v. Brazzon*, 11th Dist. Trumbull No. 2001-T-0050, 2003-Ohio-6088, as support for the proposition that the record does not sufficiently reflect that C.R. understood that he was speaking with Dr. Knight for the purposes of medical diagnosis and treatment. We find that *Brazzon* is distinguishable from the present case. In *Brazzon*, the alleged victim was six years old at the time the statements were made. Here, C.R. was 13 years old at the time he saw Dr. Knight. In addition, he had seen Dr. Knight for treatment in the past. Therefore, not only would C.R. better understand that the purpose of his visit and Dr. Knight's questions was to obtain treatment, he would also be less likely to be influenced to answer his questions in a particular way based on their phrasing.

{¶ 20} Fread also argues that the admission of C.R.'s statement fails under the factored analysis set forth in *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶49.[1] In

---

1. Despite the dissent's assertion in *State v. Clark*, ___ Ohio St.3d ___, 2013-Ohio-4731, ¶ 96, indicating that *Muttart* has been effectively overruled, we will limit the interpretation of *Clark* to its impact on the role of teachers and continue to apply the factored analysis in *Muttart* in cases such as this until such time as *Muttart* is explicitly overruled by the Ohio Supreme Court.

*Muttart*, the Ohio Supreme Court considered various factors when determining the purpose of the child's statements made to a social worker regarding sexual abuse. These factors include:

> (1) whether the child was questioned in a leading or suggestive manner; (2) whether there is a motive to fabricate, such as a pending legal proceeding or "bitter custody battle;" (3) whether the child understood the need to tell the physician the truth; (4) whether the age of the particular child making the statements suggests the absence or presence of an ability to fabricate; and (5) whether the child was consistent in her declarations.

*Wagers* at ¶ 54, citing *Muttart* at ¶ 49.

{¶ 21} *Muttart*, like *Brazzon*, involved a much younger child than C.R. In *Muttart*, the statements sought to be admitted were made by a child under ten years of age. As noted above, C.R. was 13 years old at the time the statements were made. Dr. Knight asked him directly if he had been choked and pushed backward onto his bed by Fread. C.R. stated affirmatively that he had. We again note that based on C.R.'s age and his having visited Dr. Knight for treatment in the past, it is less likely he would be influenced to answer questions in a particular way based on their phrasing. He would also better understand that the purpose of visiting with a psychologist is to obtain diagnosis and treatment, rather than gathering evidence against Fread. Furthermore, his statements to Dr. Knight were consistent with the statements he made to Officer Chenowith during the investigation of the incident.

{¶ 22} Finally, under the *Muttart* analysis, Fread argues that C.R. had significant motive to fabricate in the present case. In support of this argument, Fread offers that: (1) C.R. was often asked by his father and stepmother what goes on when he visits Fread's home; (2) the session with Dr. Knight occurred over two weeks after contact was initiated with law enforcement; (3) C.R. sought to continue a fabricated story made up when his stepmother required him to sort clothes before he could go outside to play; and (4) C.R. is a habitual liar. However, all of these are factual and credibility issues that the trial court was in

the best position to resolve. We find the trial court did not err in refusing to believe that the above-cited potential motives caused C.R. to fabricate his story to Dr. Knight.

{¶ 23} In light of the foregoing, having found that: (1) the trial court did not err in allowing Dr. Knight to testify as a lay witness regarding factual matters; and (2) C.R.'s statements to Dr. Knight were made for the purposes of diagnosis and treatment and are therefore admissible as exceptions to hearsay under Evid.R. 803(4), Fread's first assignment of error is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} [FREAD'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 26} A manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298.

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

{¶ 27} While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial

weighs heavily in favor of acquittal. *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997).

{¶ 28} In the present case, C.R. testified that Fread pushed him backward onto his bed, put his hands around his throat and choked him. That testimony was consistent with the statements C.R. made to Dr. Knight and Officer Chenowith. On the other hand, Fread outright denies that he pushed C.R. backward onto the bed and choked him.

{¶ 29} While there was some evidence introduced to cast doubt upon C.R.'s testimony, we cannot find it to have been so incredible, inconsistent or unreliable as to create a manifest miscarriage of justice. While this court considers the credibility of witnesses in a manifest weight analysis, the trial court remains in the best position to view the witnesses, observe their demeanor, and assess their credibility. *E.g.*, *State v. Brown*, 12th Dist. Butler CA2011-11-207, 2013-Ohio-1610, ¶ 37. "It is well established that '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.'" *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11, quoting *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 38.

{¶ 30} In the present case, the judge, as the trier of fact, simply believed the testimony of C.R. over that of Fread. The record does not yield such internal inconsistency or incredibility as to render C.R.'s testimony unreliable and therefore create a manifest miscarriage of justice. Accordingly, we cannot find that Fread's conviction was against the manifest weight of the evidence.

{¶ 31} Fread also argues that his conviction was against the sufficiency of the evidence. In turn, the state argues that Fread waived his right to assert a sufficiency of the evidence claim because he failed to make a Crim.R. 29 motion, both after the presentment of the state's case and at the conclusion of the evidence. However, we need not address that issue because "[a] determination that a conviction is supported by the manifest weight of the

evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 32} In light of the foregoing, having found that Fread's conviction was not against the manifest weight of the evidence, Fread's second assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT ERRED BY FAILING TO GRANT [FREAD'S] MOTION FOR NEW TRIAL/FINDING OF LESSER INCLUDED OFFENSE OF DISORDERLY CONDUCT.

{¶ 35} Having found that Fread's conviction for domestic violation was supported by the manifest weight of the evidence, we find that the trial court did not err in refusing to grant Fread's motion for new trial or, in the alternative, find Fread guilty of the lesser included offense of disorderly conduct.

{¶ 36} Accordingly, Fread's third assignment of error is overruled.

{¶ 37} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.