[Cite as *State v. Howard*, 2020-Ohio-5072.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190451 |
| | | C-190452 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1804688 |
| | | B-1900273 |
| vs. | : | |
| MICHAEL HOWARD | : | |
| | | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: October 28, 2020

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Mary Stier,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of Angela Glaser*, and *Angela Glaser,* for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}   Defendant-appellant Michael Howard was charged with two counts of rape (oral and anal), and one count of felonious assault with a sexual motivation specification (failure to disclose his HIV status). At the conclusion of Howard's trial, the jury found Howard guilty of oral rape and felonious assault, but acquitted him of anal rape and the sexual-motivation specification.

{¶2}   Howard has presented six assignments of error for our review.  He argues that (1) the trial court erred when it allowed the state to introduce testimony that he refused to speak to police; (2) the trial court erred when it allowed the state's expert witness to render expert opinions without providing the defense with a Crim.R. 16(K) expert report; (3) he was denied the effective assistance of counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth Amendment to the United States Constitution; (4) the trial court erred when it permitted the state to play a recording of his entire interview with police for the jury; (5) the trial court erred in failing to merge the felonious-assault conviction with the rape conviction at sentencing; and (6) his conviction for rape was based upon insufficient evidence.

{¶3}   We hold that the state's failure to provide the defense with an expert-witness report compliant with Crim.R. 16(K) denied Howard a fair trial.  Accordingly, Howard's convictions for rape and felonious assault must be reversed, and the cause remanded for a new trial.

### *Factual Background*

{¶4}     Ira Thompson testified that he met Howard in 2008.  That same year, the two engaged in a consensual sexual act in which Thompson performed fellatio on Howard.   Thompson described Howard's conduct during that encounter as "aggressive," and testified that Howard placed his hand on the back of Thompson's head during the fellatio act.  The two men ran into each other again in September 2017, when they began working together at the same call center.  Thompson testified that on September 28, 2017, Howard asked Thompson for a ride home in exchange for $10 in gas money.   Thompson agreed.   When they arrived at Howard's apartment, Thompson went inside.  Thompson testified that once in the apartment, Howard changed into "silky pajama pants" and a t-shirt, and sat on the couch and "beckoned" Thompson to sit by him.  Thompson resisted at first, but eventually sat down.   After talking about work for a few minutes, Howard put his hand on Thompson's thigh and tried to kiss him.

{¶5}     Thompson testified that he said "man, gone," as in "stop," and moved Howard's hand off his thigh.   Howard became angry and mounted Thompson, straddling him and restraining his hands while trying to kiss him.   Thompson testified that he yelled "stop" and kept moving his head side to side to avoid Howard's attempts to kiss him, but Howard grabbed him by the throat.   Howard undressed him, bit him on his chest and neck, and "sucked" on his nipple. Thompson continued to fight and say "stop" and "no" while Howard pulled Thompson's pants and underwear off, ripping his underwear in the process. Thompson testified that Howard performed fellatio on him, and put his tongue and

finger into Thompson's anus. Howard then grabbed him by the neck and pushed him into the bedroom.

{¶6} Thompson testified that once in the bedroom, Howard pushed him onto the bed, straddled him, and grabbed lubricant and "massag[ed]" Thompson's penis. Howard then inserted Thompson's penis into his anus. Thompson testified that Howard choked him, and then grabbed Thompson's lower jaw, forced his mouth open, and "jabbed" his penis into Thompson's mouth several times. Thompson gagged, and Howard ejaculated onto his face, neck, and chest. He testified that Howard told him, "The only reason why I did it is because you challenged me. Now run home and tell your dude what I just did."

{¶7} Thompson left the apartment. He went to a gas station and bought cigarettes, and then went home because his husband needed the car to get to work. Thompson testified that he did not tell his husband about the alleged rape. Once his husband left, Thompson laid in bed and called the suicide hotline because he felt like he wanted to kill himself. A while later, a friend called and could tell something was wrong, so she came over. Thompson told her what happened and she convinced him to call the police. Thompson testified that Howard never told him that he was HIV positive, and that he did not know until he came to court.

{¶8} On cross-examination, Thompson confirmed that he told detectives that Howard had choked him multiple times, and hard enough to make him light-headed and partially block his airway. Thompson testified that when he went to the hospital he could see marks on his neck from the choking, but admitted that his husband did not notice any marks.

{¶9} Howard testified in his own defense at trial. Howard admitted to having sexual contact with Thompson, but claimed that it was consensual. Howard also claimed that prior to the two having sex, Thompson knew that Howard was HIV positive.

{¶10} Howard testified that Thompson had agreed to give him a ride home, but denied agreeing to pay for the ride. When they arrived at his home, Thompson asked if he could come in and use the restroom, and Howard said "yes." Howard testified that they sat on the couch and talked, including about Howard's HIV diagnosis. Howard testified that he is HIV positive, but "untransmittable." Dr. Kay Johnson, Howard's treating physician, testified that although Howard is HIV positive, his levels are low and he cannot transmit the virus.

{¶11} Howard testified that as he and Thompson were sitting on the couch, they started kissing. He described the encounter as "mutual" and "passionate." They pulled each other's pants down and Thompson performed fellatio on him. Howard testified that "in the heat of the moment and the passion" he put his hand on Thompson's head and "push[ed] in." Thompson then sat back on the couch, and Howard started "licking on [Thompson], like, on his nipples, sucking on his nipples. And I was sucking on his right hip, like – as in like a passion mark. And I left a passion mark." He then performed fellatio on Thompson. He testified that they moved to the bedroom, where Thompson anally penetrated him from behind. Then, Thompson laid on his back on the bed and Howard got on top of him. He testified that Thompson ejaculated inside of him and he ejaculated onto Thompson's chin and chest. Howard denied putting his penis into Thompson's mouth in the bedroom.

{¶12} Howard admitted that at the time of the encounter, he was approximately 70 pounds heavier than Thompson, but he testified that at no point during the encounter did Thompson ever tell him "no," scream, kick, or scratch him. He denied ever holding Thompson down, choking him, prying his mouth open, or ripping his underwear. He testified that when Thompson left he did not see any injuries on Thompson, and he seemed "perfectly fine."

{¶13} Cincinnati Police Detective William Wolner, along with another detective, interviewed Howard after his arrest. An audio recording of the interview was played during trial, but the quality is poor and at times indecipherable.

{¶14} Wolner testified that there were multiple inconsistencies in Howard's story and that he had failed to disclose certain information during the interview. Although Howard disclosed that he and Thompson had been romantically involved in 2008, he said nothing about Thompson performing fellatio on him, and instead stated that they had only kissed. Wolner testified that Howard initially stated that he could not get an erection due to erectile dysfunction from diabetes, but admitted later in the interview that he could get "semi-erect" and ejaculate. Howard initially described the encounter as "passionate" and "mutual," but after being confronted with evidence of redness and bruising to Thompson's mouth and throat, he admitted to pushing Thompson's head down onto his penis and stated that it could have been "a little rough" for Thompson. Wolner testified that Howard initially did not say anything about biting Thompson, but after being confronted with evidence of the mark on Thompson's hip, he admitted to "nibbling" on Thompson. Finally, Wolner testified that Howard did not tell him during the interview that he was HIV positive. Wolner later learned that Howard was HIV positive after listening to a jail call.

{¶15} Teara Shuck is a registered nurse and certified "Sexual Assault Nurse Examiner" ("SANE"). At trial, she was qualified as an expert witness in "sexual assault examinations." She performed a sexual assault examination of Thompson, and recorded her observations in a report admitted at trial ("SANE Report"). Shuck testified that Thompson reported tenderness when she palpated his neck, and she observed a bruise on Thompson's hip where he had reported being bitten.

{¶16} Shuck notated in her SANE Report that there was bruising and redness to the lateral walls of Thompson's throat and the back of his mouth. Photographs of the apparent injuries were admitted as evidence, but Shuck testified that the photographs do not show the injuries very well because she had trouble getting a good photograph due to shadows in the mouth. She testified that the bruising and redness "is consistent with [Thompson's] narrative history of * * * a penis being forced into his mouth. And this is consistent with forceful penetration." She further testified that the bruising and redness were consistent with blunt force trauma and were not the result of illness.

{¶17} Shuck testified that she could not say whether the forceful penetration was consensual. She admitted that there were no bite marks, bruises, or signs of redness on Thompson's neck or chest, but testified that the appearance of bite marks can vary from person to person due to how their skin reacts. She testified that depending on the force, pressure, position, and whether a patient has a bleeding disorder, choking may not result in a physical mark on the skin, and that it would not be unusual to not find marks on a victim's neck even though the victim reported being choked. Shuck also testified that there was no evidence of injury to Thompson's anus or genitals.

{¶18} Devonie Herdeman is a forensic scientist at the Ohio Bureau of Criminal Investigation ("BCI"). She analyzed Thompson's underwear for the presence of DNA. She testified that trace amounts of semen were recovered from Thompson's underwear, but were consistent only with Thompson's DNA. She testified that Howard's DNA was present only in the "non-sperm fractions" of samples taken from Thompson's underwear.

### Sixth Assignment of Error

{¶19} For ease of discussion, we will discuss Howard's assignments of error out of order. Howard fashions his sixth assignment of error as a challenge to the sufficiency of the evidence supporting his convictions, but he does not present any argument as to how his convictions were based upon insufficient evidence. Instead, he discusses why his rape conviction was against the manifest weight of the evidence.

{¶20} This court is limited to determining the merits of any appeal "on the assignments of error set forth in the briefs * * * to receive consideration on appeal, trial court errors must be raised by assignment of error and must be argued and supported by legal authority and citation to the record." (Citation omitted.) *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 43 (1st Dist.); App.R. 16(A)(7). Thus, Howard has forfeited any argument regarding the sufficiency of the evidence supporting his convictions.

{¶21} Since we hold that Howard is entitled to a new trial under his second assignment of error, his argument that his rape conviction was against the manifest weight of the evidence is moot. *See State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 26 (1st Dist.). Howard's sixth assignment of error is overruled in part and rendered moot in part.

***Second Assignment of Error***

{¶22} In his second assignment of error, Howard contends that the trial court erred when it allowed Shuck to render expert opinions without providing the defense with an expert report.

{¶23} We review the admission of expert testimony for an abuse of discretion. *State v. Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, ¶ 9.

{¶24} Crim.R. 16(K) requires that an expert witness prepare a "written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications." The report must be turned over to the other side "no later than twenty-one days prior to trial." Crim.R. 16(K). "Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." *Id.*; *State v. Boaston*, Slip Opinion No. 2020-Ohio-1061, ¶ 1.

{¶25} As discussed by this court in *Hall,* the purpose of Crim.R. 16(K) is to avoid "trial by ambush." *Hall* at ¶ 11. In the context of a criminal prosecution, Crim.R. 16(K) provides the defense "an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report." *Id.*, quoting *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 36.

{¶26} The court qualified Shuck as an expert witness and admitted as evidence the SANE Report and photographs of the apparent redness and bruising to Thompson's throat and mouth. During her direct examination of Schuck, the prosecutor stated, "So we talked about two specific physical injuries after you went

9

through your exam. And I would like to ask you your opinions about those injuries."

The prosecutor asked Shuck whether she was able to formulate an opinion as to the redness and bruising to the mouth and the back of the throat. Shuck testified, "It is consistent with [Thompson's] narrative history of * * * a penis being forced into his mouth. And this is consistent with forceful penetration." The prosecutor then asked, "And what do you base—so do you have an expert opinion about what is reflected to the injury in the back of the victim's throat?" Defense counsel objected, and the following exchange occurred at sidebar:

Defense counsel: We object to her indicating based on her expert status that she is – that she has an opinion that is a forceful penetration because that's not reflected anywhere in her record. So we have not had an opportunity to arrive with any expert of our own whether or not that is, in fact, forceful penetration. She – obviously, there is no report indicating that that would be her testimony.

The court: Okay. Response?

Prosecutor: I believe that the witness is qualified to render an opinion of this nature based on her training and her experience. And that is the point of her testimony at trial.

The court: I'm going to overrule the objection on the basis that she can say, and did say that it is consistent with what was reported and what was reported contained in the notes. She is not stating definitively that was the cause, only that it's consistent – that the bruising is consistent with forceful penetration. So the objection is noted but overruled.

Defense counsel:  To the extent that she would say that it's her scientific expert opinion that it was, that –

The court:  Then it would be sustained.

{¶27}  Howard contends that the following opinions rendered by Shuck were expert testimony: (1) that the bruising and redness in Thompson's mouth and throat were consistent with his narrative and forceful penetration; (2) that the bruising and redness were consistent with blunt force trauma and were not the result of illness; (3) that the appearance of bite marks can vary person to person because people's skin reacts differently; and (4) that choking may not always result in a physical manifestation such as a mark on the skin or redness.

{¶28}  The state concedes that that Shuck's opinions were not included in the SANE Report.  Instead, it argues that although Shuck was qualified as an expert, her testimony was not expert testimony, but rather lay testimony admissible under Evid.R. 701.  Therefore, we must first determine whether Shuck's testimony was expert or lay testimony.

{¶29}  In *State v. Lavender*, 2019-Ohio-5352, 141 N.E.3d 1000, ¶ 94 (1st Dist.), this court identified an expert witness as one who is "qualified by knowledge, skill, experience, training, or education to provide a scientific, technical, or other specialized opinion about the evidence or a fact issue."  *Id.* at ¶ 95, quoting *State v. Fread*, 12th Dist. Butler No. CA2013-03-045, 2013-Ohio-5206, ¶ 14.  A lay witness is restricted to "giving an opinion or making an inference that (1) is based on firsthand knowledge, and (2) is helpful in clarifying the testimony or in determining facts."  *Id.* "The distinction between lay and expert-witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert

testimony results from a process of reasoning that only specialists in the field can master." *Lavender* at ¶ 95, citing *State v. McKee*, 91 Ohio St.3d 292, 297, 744 N.E.2d 737 (2001), fn. 2.

{¶30} Shuck testified regarding her education and experience, including that she had conducted over 400 sexual-assault examinations, and was recognized by the court as an expert witness. Although a lay person is arguably capable of making a connection between bruising and redness and forceful penetration, Shuck's notes in the SANE Report do not indicate the extent or severity of the bruising and redness, and Shuck testified that she could not have "confirmed" the injuries based solely on the photographs of the apparent bruising and redness. Therefore, the jury was asked to rely on Shuck's personal observations and her opinion that the severity of the bruising and redness led her to conclude that it was "consistent with" Thompson's narrative of "a penis being forced into his mouth * * * forceful penetration," and "blunt force trauma." This "consistent with" testimony went beyond a lay person's knowledge—it resulted from Shuck's expertise in sexual assault examinations.

{¶31} Shuck rendered further expert testimony when she ruled out illness as a source of the bruising and redness, opined that the manifestation of bite marks on skin vary from person to person, and stated that choking may not result in a mark on the neck.

{¶32} The court overruled defense counsel's objection on the basis that Shuck testified that the injuries were *consistent* with Thompson's narrative and forceful penetration, and not that the injuries were *definitively* caused by forceful penetration. However, expert testimony is often stated in terms of whether an injury or a behavior is "consistent with." *See, e.g., State v. Stowers*, 81 Ohio St.3d 260, 261,

690 N.E.2d 881 (1998) (court held that an expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children was admissible as expert testimony).

{¶33} Having determined that Shuck's testimony was expert testimony and that the state failed to comply with Crim.R. 16(K), we must now determine whether the error was harmless. *See Boaston*, Slip Opinion No. 2020-Ohio-1061, at ¶ 60.

{¶34} Crim.R. 52(A) provides, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order for a defendant's substantial rights to be prejudiced by an error, the error "must have affected the outcome of the [trial] court proceedings." *Boaston* at ¶ 62, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7.

{¶35} This requires a three-part analysis:

First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

(Citations omitted.) *Boaston* at ¶ 63, quoting *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37.

{¶36} Howard likens his case to *Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, where in a case involving child sexual abuse, the trial "hinged on a credibility battle between the defendant and his accusers." *Id.* In *Hall*, the state qualified Detective Jane Noel as an expert in investigating child abuse and

neglect, but failed to provide an expert report as required by Crim.R. 16(K). *Id.* at ¶ 12. This court held that it was not harmless error to admit the expert witness's testimony where the testimony improperly bolstered the credibility of the victims and the state's medical expert witness.

{¶37} In its harmless-error analysis, first the court determined that Hall was prejudiced by Noel's testimony because Noel was presented as an "accomplished expert," the state emphasized Noel's testimony throughout closing argument, and her testimony bolstered the victims' testimony where the "state's entire case hinged on the credibility of the victims." *Id.* at ¶ 21-22. Also, the court noted that the "weight that expert testimony carries with the jury is fundamentally different than that of lay testimony," and "countering such testimony requires unique considerations, of which defense counsel was deprived in this instance." *Id.* at ¶ 23.

{¶38} Second, the court determined that the error was not harmless beyond a reasonable doubt. "Noel's testimony bolstered the children's testimony by lending it credibility in a case without any physical evidence against the defendant, thus likely impacting the jury's verdict." *Id.* at ¶ 24. The court also highlighted that the defendant was acquitted on multiple of the 12 counts against him; "this is not the prototypical case where evidence of guilt is strong, and we can have confidence that the error did not impact the outcome." *Id.*

{¶39} Finally, the court excised Noel's testimony and reviewed the strength of the remaining evidence. *Id.* at ¶ 25. The case depended on who the jury found more credible—Hall or the victims. *Id.* Thus, the "admission of Detective Noel's expert testimony likely colored the jury's ability to properly weigh the credibility of the witnesses." *Id.*

{¶40} Turning to the present case, we must first decide whether Howard was prejudiced by the inclusion of Shuck's testimony. Since Howard admitted to "nibbling" on Thompson and leaving a "passion mark" on his hip, Shuck's testimony regarding the manifestation of bite marks did not prejudice Howard, and so was harmless.

{¶41} The state contends that Shuck's remaining expert opinions did not prejudice Howard because he admitted that the encounter with Thompson may have been "a little rough," and admitted that he "pushed" Thompson's head onto his penis while Thompson performed fellatio on him in the living room.

{¶42} The problem with the state's argument is that Thompson denied ever performing fellatio on Howard in the living room. Rather, the charge of oral rape was based on Thompson's testimony that after the anal sex in the bedroom, Howard forced Thompson's mouth open and forcefully "jabbed" his penis into his mouth several times. Howard denied ever putting his penis in Thompson's mouth in the bedroom.

{¶43} Shuck was presented as an expert witness with extensive training and experience in conducting sexual-assault examinations, including having conducted over 400 such examinations. Similar to *Hall,* the case hinged on a credibility determination between Howard and Thompson. The jury acquitted Howard of anal rape (for which Shuck did not testify as to any physical injuries), and convicted him of oral rape (for which Shuck testified that Thompson had injuries to his throat and mouth consistent with "having a penis forced into his mouth," forceful penetration, and blunt force trauma).

15

{¶44} Shuck testified that the pictures of the bruising and redness to the throat and mouth do not accurately reflect the extent of the injuries. She even testified that she would not have been able to "confirm" the injuries based on the photos alone. This makes her "consistent with" testimony even more impactful—the jury was asked to rely on her visual findings in order to appreciate the extent of the bruising and redness in Thompson's throat.

{¶45} Thompson testified that Howard choked him multiple times, and hard enough to partially block his airway and cause him to become light-headed. Shuck's testimony regarding the lack of marks on Thompson's neck helped explain why Thompson's husband did not notice any marks on his neck when Thompson came home, and why Shuck did not observe any marks on Thompson's neck during her examination.

{¶46} In closing, the state emphasized Shuck's testimony that the injuries to the mouth and throat were the result of blunt force trauma, were consistent with Thompson's story, and could not have been caused by illness. The prosecutor stated, "There is physical evidence that matches Mr. Thompson's version of events."

{¶47} Also, as defense counsel pointed out in his sidebar conversation with the trial judge regarding his objection, he was not put on notice that Shuck would testify that the bruising and redness in the throat were "consistent with forceful penetration" and Thompson's narrative, and so he was unable to effectively counter Shuck's testimony. *See Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, at ¶ 23.

{¶48} The state contends that Howard was provided with Shuck's SANE Report prior to trial, and so was not "ambushed" by Shuck's testimony and had the

opportunity to hire his own expert. There are three problems with the state's contention. First, there is no question that the SANE Report did not include Shuck's expert opinions.

{**¶49**} Second, we question whether the lack of surprise should be considered in the harmless-error analysis. In *Boaston,* the court considered the fact that the defense was not surprised by the coroner's testimony when determining whether the trial court erred in admitting the testimony, but it did not consider the lack of surprise in its harmless-error analysis. *Boaston,* Slip Opinion No. 2020-Ohio-1061, at ¶ 64-70.

{**¶50**} Third, even if we do consider that Howard was on notice that Shuck had observed redness and bruising in Thompson's throat and mouth, it did not excuse the state's failure to provide an expert report that included Shuck's opinions. In *Boaston*, defense counsel met with the coroner-expert witness 19 days before trial and became aware that the coroner would testify to two opinions not included in the previously provided expert report: the victim's time of death and that a belt buckle was consistent with an abrasion on the victim's chin. *Id.* at ¶ 40. Defense counsel went so far as to suggest to the state that it provide a supplemental expert report disclosing those opinions, but the state never did. *Id.* Despite the fact that defense counsel was not "ambushed" or "surprised" at trial when the coroner testified to those opinions, the Ohio Supreme Court held that it was error to admit the testimony because the opinions were not provided in an expert report. *Id.* at ¶ 59.

{**¶51**} For the foregoing reasons, we find that Howard was prejudiced by Shuck's "consistent with" testimony, her testimony ruling out illness as a source of

the injuries, and her testimony regarding the lack of choke marks on Thompson's neck.

{¶52} In the second prong of the harmless-error analysis, we must determine whether the inclusion of Shuck's testimony was not harmless beyond a reasonable doubt. As in *Hall,* the fact that the case hinged on a credibility determination between Howard and Thompson carries great weight. Also, Howard was acquitted of anal rape and the sexual-motivation specification. This was not a case where the evidence was so overwhelming that we can say that Shuck's testimony did not affect the outcome. *See Hall,* 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, at ¶ 24.

{¶53} Finally, once we excise the offending portions of Shuck's testimony, we must determine whether the remaining evidence establishes Howard's guilt beyond a reasonable doubt. Once again, that the case depended on who the jury found more credible, Howard or Thompson, weighs heavily. The admission of Shuck's expert testimony "likely colored the jury's ability to properly weigh the credibility of the witnesses." *See Hall* at ¶ 25. The remaining evidence against Howard is underwhelming. Therefore, we cannot say that it establishes Howard's guilt beyond a reasonable doubt.

{¶54} Having determined that the inclusion of Shuck's testimony was not harmless error, and therefore, warrants reversal of the rape conviction, we must now decide whether the error also requires reversal of the felonious-assault conviction. If we determine that the error in admitting Shuck's expert testimony "affected," "tainted" or "cast considerable doubt" on the felonious-assault conviction, the interests of justice require reversal of the felonious-assault conviction. *See, e.g.,*

*United States v. Kenney*, 911 F.2d 315, 319 (9th Cir.1990) (giving of an improper jury instruction on elements of mail fraud necessitated reversal of mail fraud conviction, but did not require reversal of the remaining convictions for Travel Act violations and conspiracy; mail fraud did not support either conviction nor were those convictions affected by the defective instruction); *United States v. Kaplan*, 470 F.2d 100, 103 (7th Cir.1972) (holding that error required reversal of defendant's conviction on one count, but not on the remaining counts because they were not "tainted" by the error); *United States v. Robinson*, 545 F.2d 301, 308 (2d Cir.1976) (holding that because the erroneous jury charge on one count cast "considerable doubt" on the validity of the remaining count of conviction, "the interests of justice" require a new trial on that count).

{¶55} The crux of the felonious-assault case was whether Thompson knew, prior to the sexual act, that Howard was HIV positive. Howard testified that Thompson knew that he was HIV positive, and that they even discussed his diagnosis while they were sitting in the living room on the day in question. Howard also testified that he "posted" on his social media accounts that he was HIV positive, and that generally he was open about his diagnosis. Thompson testified that Howard never told him that he was HIV positive, and that he was not aware of that fact until he came to court.

{¶56} If the jury believed that Howard lied about not orally raping Thompson, then it would stand to reason that they may have believed that he lied about telling Thompson that he was HIV positive. Since Shuck's testimony bolstered Thompson's credibility, and credibility was crucial to the outcome of the felonious-assault charge, we find that Shuck's testimony affected, tainted, and cast

considerable doubt on the felonious-assault conviction. In the interests of justice, the second assignment of error is sustained as to both the rape and felonious-assault convictions.

### *Conclusion*

{¶57} Howard's sixth assignment of error is overruled. His second assignment of error is sustained. The remaining assignments of error are rendered moot by our disposition of the second assignment of error, and therefore, we do not address them. The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Judgment reversed and cause remanded.

ZAYAS, P.J., and MYERS, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.