[Cite as *State v. Wilson*, 2023-Ohio-1046.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111814 |
| v. | : | |
| ARLANDER WILSON III, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 30, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-639830-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl M. Felice, Assistant Prosecuting Attorney, *for appellee.*

Weston Hurd LLP and Paul Shipp, *for appellant.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Defendant-appellant Arlander Wilson III ("Wilson") appeals his conviction and sentence. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} This matter stems from the shooting of Javonte Harris ("Harris") on February 4, 2019, at the Arbor Park apartment complex ("Arbor Park"). Arbor Park's surveillance camera footage from that day depicted an individual dressed in a dark hoodie with the hood pulled up over his head, blue underwear, acid-washed jeans, and red boots exiting the rear door of the apartment situated at 2520 East 37th Street ("apartment 2520").[1] The individual's face was not identifiable in any of the surveillance camera footage. The individual exited apartment 2520 and followed the sidewalk from the rear courtyard to Ali-Bey Avenue, where he entered the rear door of a waiting minivan. The minivan drove away and moments later stopped on Ali-Bey Avenue, just west of the East 36th Street intersection. The shooter exited through the rear driver's side door, walked east on Ali-Bey Avenue towards East 36th Street, and stopped near a dumpster. The surveillance camera footage does not provide a close-up view of the shooter exiting the minivan or walking along Ali-Bey Avenue, but it is clear from the footage that he wore jeans and a dark-colored hoodie.

{¶ 3} At the same time the shooter walked east on Ali-Bey Avenue, Harris walked north on East 36th Street towards the intersection of Ali-Bey Avenue. When Harris reached the intersection, the shooter fired several gun shots at Harris. Harris fled east on Ali-Bey Avenue and entered an apartment within Arbor Park.

---

[1] The surveillance camera footage was not one continuous camera shot, but included footage obtained from numerous cameras positioned throughout Arbor Park.

**{¶ 4}** The surveillance camera footage depicted the shooter running west on Ali-Bey Avenue, wearing the same clothing as the individual who previously exited apartment 2520 — a dark hoodie with the hood pulled up over his head, blue underwear, acid-washed jeans, and red boots. The surveillance camera footage also showed the shooter was quickly picked up by what appeared to be the same minivan he previously rode in before the shooting.

**{¶ 5}** Immediately after the shooting, Arbor Park security and Cleveland police officers arrived and canvassed the area. Travis Reyersbach ("Reyersbach") and Robert Weltendorf, private security employees for Arbor Park, collected bullet shells near the dumpster on Ali-Bey Avenue where the shooting occurred. Reyersbach also reviewed the apartment complex's surveillance camera footage and, with his knowledge of approximately when and where the shooting occurred, he secured footage of the shooting. Reyersbach then reviewed Arbor Park's surveillance camera footage both before and after the shooting, looking for an individual wearing clothes similar to those worn by the shooter. Based on the clothing worn by the shooter, Reyersbach obtained surveillance camera footage of the shooter from the time he exited apartment 2520, committed the alleged offense, and left Arbor Park in a minivan. Reyersbach and other security employees also referenced Arbor Park's book of cited trespass violations — citations previously issued due to an individual's unwanted presence at Arbor Park — and found a trespass violation stemming from apartment 2520 had been issued to Wilson. The

surveillance camera footage and Wilson's prior trespass violation were provided to the police department.

{¶ 6} Detective James Crivel ("Detective Crivel") with the Division of Police investigated Harris's shooting. Detective Crivel entered Wilson's name into the police database referenced as Ohio Law Enforcement Gateway ("OHLEG") and obtained a picture of Wilson as well as his height and weight. After comparing the OHLEG data with a close-up screenshot of the shooter when he exited apartment 2520, Detective Crivel believed the OHLEG data supported the conclusion that Wilson was the shooter. Approximately three hours after the shooting, Detective Crivel questioned Synthia Franklin ("Franklin"), the leaseholder of apartment 2520, who stated Wilson, the father of her child, exited the back door of her apartment earlier that day wearing red boots.

{¶ 7} On May 16, 2019, in Cuyahoga C.P. No. CR-19-639830 ("CR-19-639830"), a Cuyahoga County Grand Jury indicted Wilson on Count 1, attempted murder, in violation of R.C. 2923.02 and 2903.02(A); Count 2, felonious assault in violation of R.C. 2903.11(A)(1); Count 3, felonious assault in violation of R.C. 2903.11(A)(2); and Count 4, having weapons while under disability in violation of R.C. 2923.13(A)(2). Counts 1, 2, and 3 included notice of prior conviction and repeat violent offender specifications, and all four counts carried one-year, three-year, and 54-month firearm specifications.

{¶ 8} On May 31, 2019, the trial court issued a capias for Wilson, and he was in the court's custody as of September 13, 2019. On September 17, 2019, Wilson

pleaded not guilty to the indictment. On September 26, 2019, the trial court transferred Wilson's case to the mental health court docket. The trial court conducted multiple pretrial hearings from October 13, 2019, through March 9, 2020, with trial set on April 27, 2020. Then, in an attempt to reduce the community spread of Covid-19, the trial court continued the trial date several times until the spring of 2021. During that time, on November 5, 2020, Wilson posted bond.

{¶ 9} On May 27, 2021, Wilson voluntarily waived his right to a jury trial on the notice of prior conviction; repeat violent offender and 54-month firearm specifications; and Count 4, having weapons while under disability.

{¶ 10} On June 1, 2021, the trial court impaneled a jury and trial commenced. On June 2, 2021, Wilson failed to appear at trial. The court issued a capias and proceeded with the jury trial despite Wilson's absence. On June 3, 2021, in Wilson's abstentia, the jury returned guilty verdicts on Count 1, attempted murder, with one- and three-year firearm specifications, and Counts 2 and 3, felonious assault, each with one- and three-year firearm specifications. The court found Wilson guilty of the notice of prior conviction and repeat violent offender specifications on Counts 1 through 3 and the 54-month firearm specifications on Counts 1 through 4.

{¶ 11} One year later, on June 25, 2021, the trial court obtained custody of Wilson. The trial court held a number of status hearings between July 14, 2021, and May 9, 2022, and noted the ongoing proceedings against Wilson in two pending

criminal cases: Cuyahoga C.P. No. CR- 19-637471[2] ("CR-19-637471") and Cuyahoga C.P. No. CR-21-664708[3] ("CR-21-664708").

{¶ 12} On July 14, 2022, the trial court held Wilson's sentencing hearing in the instant matter, CR-19-639830. For sentencing purposes, Counts 2 and 3 merged into Count 1; the state elected to proceed with sentencing on Counts 1 and 4 and each count's 54-month firearm specification. The trial court sentenced Wilson to 11-years on Count 1's base offense, 54-months on Count 1's firearm specification, 36-months on Count 4's base offense, and 54-months on Count 4's firearm specification. The firearm specifications were to run consecutively to each other and

_____

[2] On March 5, 2019, in CR-19-637471, a Cuyahoga County Grand Jury indicted Wilson on two counts stemming from an unrelated incident on or about November 24, 2018, through November 25, 2018. On March 19, 2019, the trial court issued a capias for Wilson, and Wilson was in the court's custody on September 13, 2019. The trial court held pretrial hearings from October 16, 2019, through March 9, 2020, and then continued trial due to Covid-19 restrictions from April 27, 2020, through February 17, 2021. The trial court conducted status hearings and pretrial hearings from July 12, 2021, through May 9, 2022, noting the new case — CR-21-664708 — brought against Wilson. On June 21, 2022, Wilson withdrew his not guilty plea and pleaded guilty to Count 1, domestic violence. The court nolled Count 2. On July 14, 2022, the trial court sentenced Wilson to an 18-month prison sentence.

[3] On October 28, 2021, in CR-21-664708, a Cuyahoga County Grand Jury indicted Wilson on seven counts stemming from an unrelated incident on or about June 24, 2021. On November 2, 2021, Wilson pleaded not guilty to the indictment. The trial court conducted pretrial hearings from December 6, 2021, through May 9, 2022. On June 21, 2022, Wilson withdrew his not guilty plea and pleaded guilty to Count 1, having weapons while under disability with a 1-year firearm specification and forfeiture specifications and Count 4, burglary with forfeiture specifications. The court nolled the remaining counts. On July 14, 2022, the trial court sentenced Wilson to 36-months on Count 1's base offense plus one-year on the firearm specification and 8 to 12 years on Count 4, with all counts to run concurrently, but consecutively to the one-year firearm specification and the mandatory firearm specifications in the instant matter, CR-19-639830.

consecutively to the one-year firearm specification in Count 1 of CR-21-664708, for a total sentence of 24 years.

{¶ 13} On August 8, 2022, Wilson filed a timely notice of appeal, presenting four assignments of error for our review:

> Assignment of error one:  The trial court erred in providing the jury its own definition of reasonable doubt during jury selection.

> Assignment of error two:  The trial court erred in allowing a witness to testify to the ultimate issue without personal knowledge.

> Assignment of error three:  The trial court erred by admitting hearsay.

> Assignment of error four:  Appellant's convictions were against the manifest weigh of the evidence.

**Legal Analysis**

**Definition of Reasonable Doubt Standard**

{¶ 14} In his first assignment of error, Wilson argues that the trial court erred when it amplified the definition of reasonable doubt.  Specifically, Wilson argues that he was prejudiced when the trial court expounded on the definition of reasonable doubt during voir dire and allegedly lowered the jury's expectations of the evidence needed to render a guilty verdict.  The state argues the trial court's recitation of the statutory definition for reasonable doubt provided both at voir dire and when the court charged the jury properly guided the jury.

{¶ 15} During voir dire, the trial judge provided the statutory definition of reasonable doubt:

> "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly

convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

R.C. 2901.05(E).

{¶ 16} Expounding on the statutory definition and, more specifically, on the "important affairs" portion of the reasonable doubt definition, the trial judge then described how she selected a pediatrician for her children and what reasonable steps she took to make that selection. The trial judge stated she met the pediatrician, observed his interactions with her child, and spoke directly with him. The trial judge further stated:

> So the doctor is my most important affair right now, and I should tell you my son's doing a lot better. Now, with that being said, that doctor is super important in my life. That is one of the most important decisions that I have made most recently that I can give you an example about.

> Now, again, I think it would be unreasonable if I followed the doctor around, hired a private investigator and had the doctor followed for a month, so that I could be 100 percent sure, because there is no 100 percent sure, right, ladies and gentlemen? Even if I did that, would it work? Would I know everything about that person? I would not. So this is a burden of reasonable doubt, doubt based on reason and common sense, and that's what you need to remember.

Tr. 45. Wilson argues the comments above inappropriately expounded upon or amplified the unreasonable doubt definition and misled the jury as to the state's burden of proof.

{¶ 17} Defense counsel raised no objections on this issue at trial, and therefore, this issue is reviewed under the plain error standard. Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 28. Pursuant to Crim.R. 52(B), a court may take notice of plain errors affecting substantial rights although the errors were not brought to the trial court's attention. To constitute plain error, the appealing party must establish that an obvious or plain error — or deviation from a legal rule — affected the outcome of the trial. *State v. White*, 8th Dist. Cuyahoga No. 110452, 2022-Ohio-2130, ¶ 37, quoting *State v. Pratts*, 8th Dist. Cuyahoga No. 104235, 2016-Ohio-8053, ¶ 34, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "Even if the plain error standard is met, courts should only notice it 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *White* at ¶ 37, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 18} An amplification of the reasonable doubt standard "'must be erroneous and prejudicial to the complaining party before the judgment of the trial will be disturbed.'" *State v. Van Gundy*, 64 Ohio St.3d 230, 233, 594 N.E.2d 604 (1992), quoting *State v. Sargent*, 41 Ohio St.2d 85, 90, 322 N.E.2d 634 (1975). A trial court's jury instructions can negate earlier misconceptions presented during voir dire. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 125 ("mitigation-phase instructions cured any earlier misunderstandings on this point during voir dire"); *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23

N.E.3d 1096, ¶ 237 (misstated shorthand references to legal concepts during voir dire cured by correct mitigation-phase jury instructions).

{¶ 19} While we find the trial court's additional comments about reasonable doubt and important affairs were unnecessary, we do not find the statements were erroneous or prejudicial. Nor did the trial court's additional commentary on important affairs denigrate the reasonable doubt standard. *See State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 79 (counsel's analogy of crossing a bridge as an important affair did not denigrate the reasonable doubt standard). Any misconceptions created by the trial court's additional comments were remedied when the court correctly charged the jury. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 147 (the trial court's correct jury instructions cured counsel's incorrect voir dire comments describing the defendant's burden in the penalty phase). "The jury is presumed to follow the instructions given to it by the trial judge[,]" and we presume the jury here followed the statutory definition for reasonable doubt. *Ahmed* at ¶ 147, citing *State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988).

{¶ 20} For the foregoing reasons, we cannot say that the trial court's additional comments on reasonable doubt and important affairs rose to the level of plain error. Wilson's first assignment of error is overruled.

**Improper Opinion Testimony**

{¶ 21} In his second assignment of error, Wilson argues that the trial court erred when it allowed Reyersbach to identify Wilson as the shooter. The identity of

the shooter was the ultimate issue at trial. Reyersbach testified that the shooter seen in the surveillance camera footage was Wilson. However, the surveillance camera footage reviewed by Reyersbach did not clearly depict the shooter's face and Reyersbach had no personal knowledge upon which he could identify Wilson. Further, Wilson argues that the introduction of Reyersbach's statements identifying Wilson as the shooter were not harmless error pursuant to Crim.R. 52(A) and, therefore, those statements amounted to an abuse of discretion that require reversal of his convictions. The state concedes that Reyersbach's identification of Wilson was improper opinion testimony because it was not based upon personal knowledge but argues that the testimony was harmless error.

{¶ 22} Assuming Reyersbach's identification testimony of Wilson was improper, we must determine whether the introduction of that testimony constitutes harmless error or requires a remand of the instant matter. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." A judgment of conviction shall not be reversed unless the accused was prejudiced by the admission of the evidence in question. R.C. 2945.83. "Not every error requires that a conviction be vacated * * *." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24. To establish prejudice of one's substantial rights, the error "'must have affected the outcome of the [trial] court proceedings.'" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

{¶ 23} The Ohio Supreme Court set forth a three-part analysis to determine whether the introduction of improper evidence affected the substantial rights of a defendant, thereby requiring a new trial, or whether the admission of that evidence constituted harmless error under Civ.R. 52(A):

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. [*Morris*] at ¶ 25, 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. *Id.* at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 29, 33.

*State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37; *see also State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 63. The state bears the burden of demonstrating that the error did not affect the defendant's substantial rights. *State v. Johnson*, 8th Dist. Cuyahoga No. 110942, 2023-Ohio-445, ¶ 74, citing *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 55; *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. "Error in the admission of evidence is harmless beyond a reasonable doubt when 'there is [no] reasonable possibility that the improperly admitted evidence contributed to the conviction.'" *State v. Jones*, 8th Dist. Cuyahoga No. 110742, 2023-Ohio-380, ¶ 141, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 192, quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

{¶ 24} Reyersbach's testimony meets the first prong of the harmless error analysis. Because the identity of the shooter was the key issue at trial, Wilson was

prejudiced when Reyersbach identified him as the shooter. However, Reyersbach's testimony does not satisfy the second or third prong of the harmless error analysis. The error was harmless beyond a reasonable doubt because "'the remaining evidence, standing alone, constitute[d] overwhelming proof of [Wilson's] guilt.'" *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 43, quoting *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), paragraph six of the syllabus.

{¶ 25} The Arbor Park surveillance camera footage demonstrated that the shooter exited apartment 2520 wearing a black hoodie with the hood pulled up over his head, acid-washed jeans, and red boots; entered a waiting minivan; exited the minivan on Ali-Bey Avenue and shot Harris; ran from the scene; entered what appeared to be the same minivan the shooter drove in earlier that day; and drove away. Franklin testified that Wilson left apartment 2520 on the day in question wearing red boots.[4] According to the trial court record, Wilson even wore red boots on the first day of trial. The state also introduced the recordings of three jailhouse calls made by Wilson during which Wilson indicated his concern that any testimony about his wearing red boots would secure a guilty verdict against him.[5] Reyersbach's

---

[4] Franklin initially testified that she could not identify the individual depicted in the surveillance camera footage, who was wearing a black jacket, jeans, and red boots, because the picture was blurry and did not clearly show the individual's face. After the state refreshed Franklin's memory with the February 4, 2019 body camera recording from Franklin's interview with the Cleveland police officers, she identified Wilson as the individual who exited the rear door of apartment 2520 clad in red boots.

[5] Franklin also testified she was familiar with Wilson's voice, and she verified that the individual speaking in the three jailhouse calls was Wilson.

identification of Wilson was unnecessary to establish Wilson's guilt beyond a reasonable doubt. We find Wilson's arguments that DNA evidence, cell phone records, direct eyewitness testimony, or other physical evidence were required to establish his identity unpersuasive. Circumstantial evidence was sufficient to sustain a conviction where the evidence convinced the trier of fact of Wilson's guilt beyond a reasonable doubt. *See State v. O'Malley*, 8th Dist. Cuyahoga No. 109454, 2021-Ohio-2038, ¶ 25, quoting *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶ 26} Thus, we find the trial court committed harmless error when it admitted Reyersbach's comment that Wilson was the shooter. Wilson's second assignment of error is overruled.

**Hearsay Testimony**

{¶ 27} In his third assignment of error, Wilson argues that the trial court erred when it allowed Reyersbach's hearsay testimony about the contents of Arbor Park's trespass citation book. The referenced citation book was not produced in discovery nor was it presented at trial. The state contends no hearsay issue arose because Reyersbach's testimony was not offered to establish the truth of the issued citation but to clarify that during his investigation Reyersbach obtained information from the citation book that produced Wilson's name.

{¶ 28} Pursuant to Evid.R. 801(C), hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." Hearsay statements, generally, are inadmissible. Evid.R. 802. Yet, "[t]he Supreme Court of Ohio has explained that '[a] statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted.'" *State v. Adl*, 8th Dist. Cuyahoga No. 111170, 2022-Ohio-2692, ¶ 17, quoting *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118, citing *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991).

{¶ 29} Reyersbach's testimony was not offered to prove the truth of the trespassing citation against Wilson. Reyersbach testified about Arbor Park's citation book to indicate the steps of his investigation following Harris's shooting. Whether Wilson trespassed at apartment 2520 was irrelevant and had no bearing on the state's case. The testimony in question was not hearsay, and thus, Wilson's third assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 30} In his fourth assignment of error, Wilson argues the verdict was against the manifest weight of the evidence. Specifically, Wilson argues Reyersbach's testimony regarding the trespass citation was hearsay and should have been excluded; the victim, Harris, failed to testify and did not identify Wilson as the shooter; and the testimony of Franklin and Detective Crivel failed to adequately identify Wilson as the shooter. The state contends that the presented evidence weighed heavily in favor of convicting Wilson and the evidence was more than enough to support the jury's guilty verdicts.

{¶ 31} A manifest weight challenge questions the credibility of the evidence presented and examines whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins* at 390. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at paragraph three of the syllabus.

{¶ 32} Following a thorough review of the record, we cannot conclude that this is the exceptional case in which the trier of fact lost its way. We do not agree with Wilson that the only evidence that identified him as the shooter was inadmissible hearsay such as Reyersbach's reliance on the book of citations or Detective Crivel's use of OHLEG. As described previously, Reyersbach's testimony

was harmless error. Absent Reyersbach's identification of Wilson, the surveillance camera footage demonstrated the shooter, wearing a dark hoodie with the hood pulled up over his head, blue underwear, acid-washed jeans, and red boots, exited apartment 2520 and shot Harris. Franklin identified Wilson as the individual who left her home — apartment 2520 — wearing red boots. The surveillance camera footage and Franklin's testimony provided ample evidence to demonstrate Wilson shot Harris. Wilson's jailhouse calls further supported the conclusion that Wilson was the shooter. Even absent Reyersbach's testimony that he obtained Wilson's name from the citation book and Detective Crivel's testimony that he compared Wilson's OHLEG statistics with the surveillance camera footage and concluded Wilson was depicted in that footage, the evidence demonstrated that the state met its burden of persuasion. Wilson's fourth assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

LISA B. FORBES, J., and
SEAN C. GALLAGHER, J., CONCUR